IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERICK NIETO, § | | |
| Dallas Cnty. Jail BookIn No. 20043468, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:21-cv-144-L-BN | |
| § | | |
| CRIMINAL DISTRICT COURT NO. 6, § | | |
| PARKLAND HOSPITAL, and DALLAS § | | |
| COUNTY SHERIFF DEPT, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Erick Nieto, detained pretrial at the Dallas County jail, indicted for burglary of a habitation enhanced by a previous conviction for the same offense, *see State v. Nieto*, No. F2050640 (Crim. Dist. Ct. No. 6, Dallas Cnty., Tex.), has filed a *pro se* civil rights suit against the state court where his prosecution is pending, Parkland Hospital, and the Dallas County Sheriff Department, *see* Dkt. No. 3.

United States District Judge Sam A. Lindsay has referred his case to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the complaint without prejudice to Nieto's filing within a reasonable period of time, to be set by the Court, an amended complaint only as to his civil rights claims that he has alleged and that cures, where possible, the deficiencies outlined below.

## Legal Standards

Under the Prison Litigation Reform Act (the PLRA), where a prisoner – whether he is incarcerated or detained pending trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

The fails-to-state-a-claim language of this statute (as well as its sister statute, Section 1915(e)(2)(B)) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has

"suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett*, 2018 WL 6069969, at *2 (citations omitted)).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

In sum, "*[p]ro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient....'" *Brown v. Tarrant Cnty., Tex.*, ___ F.3d ____, No. 19-10549, 2021 WL 150427, at *3 (5th Cir. Jan. 18, 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

And, "[o]rdinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589

F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

**Analysis**

Nieto alleges, in a conclusory manner, that the state court has violated his right to due process by "false accusation" and "not enough evidence" and that Parkland, medical officials at the jail, and the "Sheriff Dept" have "cross contaminat[ed him] with COVID-19 and other offenders." Dkt. No. 3 at 3, 4. For relief, Nieto seeks "a restraining order hearing against the criminal court." *Id.* at 4.

First, insofar as Nieto appears to seek relief that amounts to a request for habeas relief through this civil rights complaint, "[a] state pretrial detainee is entitled to raise constitutional claims in a federal habeas proceeding under [28 U.S.C.] § 2241 if two requirements are satisfied" – (1) that petitioner is "in custody" and (2) that he has exhausted "available state remedies." *Ray v. Quarterman*, No. 3:06-cv-850-L, at *1 & n.1 (N.D. Tex. July 24, 2006), *rec. adopted*, 2006 WL 2844129 (N.D. Tex. Sept. 29, 2006). But, where a detainee seeks relief "primarily available in a civil rights action pursuant to 42 U.S.C. § 1983[, such as through claims concerning the constitutionality of his conditions of confinement,] and release [from incarceration], which is available in a habeas corpus action," he seeks "two forms of relief that cannot be obtained in the same suit." *Reed v. Thaler*, No. 2:11-cv-93, 2011 WL 3924171, at *2 (N.D. Tex. Aug. 15, 2011), *rec. adopted*, 2011 WL 3927746 (N.D. Tex. Sept. 7, 2011).

And, where a prisoner brings both "habeas and § 1983 claims," the district court is "required" to "'separate the claims and decide the § 1983 claims.'" *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463-64 (5th Cir. 1998) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam); collected cases omitted).

The Court should therefore dismiss Nieto's requests related to habeas relief – his requests concerning the ongoing state criminal proceeding – without prejudice to his filing a Section 2241 petition after properly exhausting available state remedies and continue to screen his civil rights claims.

As to those claims, insofar as Nieto as sued a non-jural defendant, such as the Dallas County Sheriff Department, those claims should be dismissed with prejudice because a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. A sheriff's office in Texas is not a jural entity. For example, relying on *Darby*, another judge of this Court has held that "the Dallas County Sheriff's Office" and the Dallas County jail "are non-jural entities under § 1983." *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (collecting cases).

Next, even if the Court forgives the jural-entity deficiency, Nieto has not alleged a plausible constitutional violation.

His conditions claim, understood to assert that he has been exposed to inmates who have contracted the COVID-19 virus, fails to include factual allegations to allow the Court to assess whether a constitutional violated has occurred.

"[S]ince pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The basic human needs of pretrial detainees are "protected by the Due Process Clause of the Fourteenth Amendment," *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)), which affords them "protections [that are] 'at least as great as ... those available to a convicted prisoner,'" *Price v. Valdez*, No. 3:16-cv-3237-D, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644-45); *accord Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). And, like the current claims, the United States Court of Appeals for the Fifth Circuit "has explained that challenges to ... sanitary conditions ... are generally considered challenges to the conditions of confinement." *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citing

*Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)).

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because, ... intent may be inferred from the decision to expose a detainee to an unconstitutional condition. A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."

*Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2, then quoting *Hare*, 74 F.3d at 645).

"Proving a pattern is a heavy burden, one that has rarely been met in our caselaw," and, "to constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 398-99 (2015) ("[A]s *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." (citations omitted)).

Numerous federal courts have recognized that "the COVID-19 pandemic presents an extraordinary and unique public-health risk to society, as evidenced by the unprecedented protective measures that local, state, and national governmental authorities have implemented to stem the spread of the virus." *E.g.*, *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 665 (S.D. Tex. 2020).

> The effects of the pandemic have been especially pronounced in jails. What we know about the virus is limited, and guidelines for preventing transmission are still being developed. The Center for Disease Control has issued guidance for management of the pandemic in correctional settings based on what was known about the virus on March 23, 2020.

*Bodnar v. Lake Cnty. Jail*, No. 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *1 (S.D. Ind. Apr. 22, 2020) (citing CDC Guidance for Correctional & Detention Facilities, *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html).

To screen the *pro se* complaint under Section 1915A, the district court in *Bodnar* determined that it could "look to the CDC website for guidance in judging the reasonableness of the actions being taken by officials at the Lake County Jail." *Id.* at *2 (citing FED. R. EVID. 201; collecting cases). And it seems appropriate for this Court to do the same. *See, e.g., Hyder v. Quarterman*, C.A. No. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites." (collecting cases)), *rec. adopted*, 2007 WL 4300442 (S.D. Tex. Dec. 5, 2007).

But Nieto has alleged no factual allegations to allow the Court to assess the reasonableness of his conditions of confinement against CDC guidance. So the Court lacks facts to determine whether Nieto has plausibly alleged that the conditions of confinement he challenges as unconstitutional and related to the pandemic are, objectively speaking, "not rationally related to a legitimate governmental objective." *Kingsley*, 576 U.S. at 398; *cf. Bodnar*, 2020 WL 1940742, at *3 ("The conditions and restrictions that he has described are 'rationally related to a legitimate nonpunitive governmental purpose' and are not 'excessive in relation to that purpose.' Thus, I

cannot permit him to proceed on these claims." (citation omitted)).

Further, Nieto's constitutional claim could also be understood as asserting a violation of the Eighth Amendment based on alleged deliberate indifference to a serious harm, the virus – or, more applicable, a violation of the Fourteenth Amendment Due Process Clause. *See Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) ("Our court has based its Fourteenth Amendment case law concerning pretrial detainees on the [United States] Supreme Court's Eighth Amendment precedent concerning prisoners." (citations omitted)).

> If so, he must allege
>
> that [he was] exposed "to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci*, 884 F.3d at 538 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). The presence of a substantial risk is an objective inquiry. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Deliberate indifference, however, is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it. *Id.* Knowledge may be inferred from the circumstances, particularly where the risk is obvious. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

*Valentine v. Collier*, 978 F.3d 154, 162-63 (5th Cir. 2020) (citation modified).

In *Valentine*, the Fifth Circuit addressed Texas prison officials' response to the spread of COVID-19 at the Texas Department of Criminal Justice's (TDCJ) Pack Unit, and observed that this circuit's

> Eighth Amendment precedent in the context of infectious disease, though limited, instructs that TDCJ met its constitutional obligations. We have twice held that testing and treating inmates who were exposed to tuberculosis is enough to establish that prison officials were not deliberately indifferent to the risk of disease. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001); *Wallace v. Dallas Cnty.*, 51 F.3d 1045 (5th Cir. 1995) (per curiam). Here, even recognizing that COVID-19 poses a greater risk than tuberculosis, any argument that TDCJ "evince[d] a wanton disregard for any serious medical needs" is dispelled by the

>affirmative steps it took to contain the virus. *Gobert*, 463 F.3d at 346 (internal quotation omitted).

*Id.* at 163-64; *see also id.* at 165 ("[T]he narrow question before us is whether Plaintiffs have proven a constitutional violation. And under governing precedent, their burden is 'extremely high.' The Eighth Amendment does not mandate perfect implementation. And 'prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.' TDCJ's measures may have been unsuccessful. But they were not unconstitutional." (citations omitted)).

Similarly, Nieto's allegations lack facts from which the Court may infer that officials at the Dallas County jail have disregarded the risks the virus presents. Thus, he has not alleged a plausible constitutional claim based on deliberate indifference.

## Recommendation

The Court should dismiss this action without prejudice to Plaintiff Erick Nieto's filing within a reasonable period of time, to be set by the Court, an amended complaint only as to his civil rights claims that he has alleged and that cures, where possible, the deficiencies outlined above.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: February 3, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE